Filed 4/2/21  P. v. Trask CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074066 |
| v. | (Super.Ct.No. RIF1901691) |
| CODY LYNN TRASK, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Randall Donald White, Judge.  (Retired Judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed as modified with directions.

Ellen M. Matsumoto, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Daniel Rogers and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found defendant and appellant, Cody Lynn Trask, guilty of domestic battery (Pen. Code, § 243, subd. (e)(1),[1] count 5), two counts of false imprisonment (§ 237, counts 6 & 9), two counts of domestic violence causing a traumatic condition (§ 273.5, subd. (a), counts 7 & 10), assault with force likely to cause great bodily injury (§ 245, subd. (a)(4), count 11), and intimidating a witness (§ 136.1, subd. (b)(1), count 13).[2] The jury additionally found true allegations that in his commission of the counts 7, 10, and 11 offenses, defendant had personally inflicted great bodily injury under circumstances involving domestic violence. (§§ 12022.7, subd. (e), 1192.7, subd. (c)(8).) Defendant admitted having suffered prior serious felony (§ 667, subd. (a)) and a prior strike convictions (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)). The court sentenced defendant to an aggregate term of 22 years four months of imprisonment and ordered that he pay $1,500 for presentence incarceration costs. (§ 1203.1c.)

On appeal, defendant contends that the court erred in denying his *Romero*[3] motion and in imposing $1,500 in costs for his presentence incarceration. The People maintain the court acted within its discretion in denying defendant's *Romero* motion but agree that

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The jury acquitted defendant of charges of domestic violence causing a traumatic condition (§ 273.5, count 1), criminal threats (§ 422, count 2), assault with force likely to cause great bodily injury (§ 245, subd. (a)(4), count 3), false imprisonment by violence or menace (§ 236, count 4), intimidating a witness (§ 136.1, subd. (b)(1), count 8), and criminal threats (§ 422, count 12). The jury also acquitted defendant of the greater charged offenses in counts 5, 6, and 9.

[3] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

2

the court erred in imposing costs for defendant's presentence incarceration. As modified, the judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND[4]

The victim started dating defendant in December 2017. She moved in with him in October 2018. She had two daughters from a previous relationship, both who initially lived with them. Defendant's daughter also stayed with them on weekends.

In January 2019, they moved into a house together in Corona. At some point, the victim's eldest daughter moved out, at least in part, due to her dislike of defendant. In February 2019, the victim's mother passed away. In the same month, defendant's brother died. Their relationship became strained thereafter.

### A.     *Counts 5 & 6—April 12, 2019*

On April 12, 2019, defendant called the victim; he asked her to skip work to come out to help him in Indio where his truck had broken down. She drove out to help him but had difficulty locating him; defendant's phone was not working. She eventually located him at a hotel. The victim was exhausted and became annoyed when defendant was not ready to leave; defendant wanted to take a shower before leaving.

Defendant was displeased when the victim grabbed her keys to leave without him. He reached for the keys and grabbed her throat. Defendant later threw the keys at the

---

[4] We relate the facts adduced at trial only as to the counts on which the jury convicted defendant.

victim, scratching her. As a result, the victim sustained discoloration of her face, jawline, and collarbone. She dropped defendant off at his truck and left.

B.      *Counts 7 & 9—April 13, 2019*

The next day, defendant asked the victim to come out to help him in Indio again. She again had trouble finding him. Once the victim located defendant, she told him to hurry up so they could leave or she would leave on her own. Defendant became upset with her.

After defendant got into the car, the victim sped off at a high rate of speed. Defendant complained that she was driving too fast and put the car in neutral. The victim grabbed his hand, scratching him with her nails in the process. Defendant responded by repeatedly hitting her in the arm with a closed fist. He then grabbed the victim by the back of her hair and hit her head into the steering wheel.

When they arrived home, they continued to argue. Defendant took the victim's phone and physically restrained her on the bed in order to prevent her from calling the police. She fell asleep with defendant on top of her, awakening the next morning.

C.      *Counts 10, 11, & 13—April 16, 2019*

On April 16, 2019, the victim told defendant he needed to move out. Defendant later took her phone, threw her on the bed, and restrained her. The victim said she was going to call for her daughter, so defendant covered her mouth and nose with a towel to keep her from screaming. The victim could not breath; she thought defendant was going to kill her. The victim told an officer she had been fighting for her life.

4

The victim's daughter reported seeing defendant push the victim into the wall. Defendant took the victim's phone to prevent her from calling the police. He laid down upon her; she would tell him to get off, but he would tell her she needed to calm down. The daughter heard the victim say that defendant was trying to strangle her. The daughter messaged a friend on her iPad requesting that she call the police. Officers arrived shortly thereafter. A forensic nurse who examined the victim documented more than 30 injuries, including bruising, scratches, and abrasions, which were consistent with the victim's account of the physical altercations between she and defendant.

## II. DISCUSSION

### A. *Romero Motion*

Defendant contends the court abused its discretion in denying his *Romero* motion. We disagree.

On September 9, 2019, defense counsel filed a *Romero* motion urging the court to strike defendant's prior strike conviction based on the circumstances of the instant offenses; the nature, age, and purported lack of severity of the prior convictions; defendant's willingness to undergo counseling; and that defendant was not a danger to society. The defense deferred to the probation officer's report regarding defendant's social history.

As evidence of prior acts of domestic violence, defendant's ex-wife testified at trial that during an argument about their daughter's custody, defendant stated, "'You will never take my daughter away from me. If you ever try to take my daughter away from me, I will kill you. If anyone ever tries to take her away from me, I will kill them.'"

5

The probation officer's report reflects that defendant had previously been convicted on December 4, 2008, for felony criminal threats (Pen. Code, § 422) and on April 26, 2018, for the misdemeanor offenses of driving without a license (Veh. Code, § 12500, subd. (a)) and possession of ammunition by a prohibited person (Pen. Code, § 30305, subd. (a)(1)).  Defendant had his parole on the felony offense revoked.  Defendant was on summary probation when he committed the instant offenses.  Defendant had a long work history, including working as a correctional officer for the California Department of Corrections for six years; however, his employment with the latter was terminated for drug use.  Defendant was 41 years old when he committed the instant offense.

The probation officer listed eight factors in aggravation, including that the instant offenses involved violence, defendant threatened witnesses, defendant took advantage of a position of trust, defendant had prior convictions of increasing seriousness, defendant had served a prior term in prison, and defendant's performance on probation was unsatisfactory.  The probation officer listed no circumstances in mitigation.  The probation officer observed that during their interview, defendant "appeared to minimize the seriousness of his actions . . . ."  "His lack of responsibility for his actions and inability to avoid such situations makes him a serious threat to the community."

At the hearing on the motion, the People argued against the court exercising its discretion to grant the motion.  Defense counsel argued in favor of the motion.  The court ruled, "I will decline to grant the *Romero* motion at this time."

"[A] court's failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard."  (*People v. Carmony* (2004)

6

33 Cal.4th 367, 374.) Under this standard, the defendant bears the burden of establishing an abuse of discretion. In the absence of such a showing, the trial court is presumed to have acted correctly. The appellate court may not substitute its judgment for that of the trial court when determining whether the trial court's decision to strike the prior was proper. (*Id.* at pp. 376-377.)

"'[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, "in furtherance of justice" pursuant to . . . section 1385[, subdivision] (a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.'" (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.) "'[W]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.'" (*Id.* at p. 378.)

Here, immediately after denying the motion, the court, who was the judge at trial, indicated it had "read and considered the probation officer's report." Thus, the court was familiar with the relevant facts. Although the court did not give reasons for its denial of defendant's motion, we presume the court acted correctly unless defendant proves otherwise. Defendant has failed to bear his burden to demonstrating error.

7

Here, defendant engaged in a series of violent acts against his girlfriend for which she sustained numerous injuries. Defendant had previously threatened the life of a person with whom he was in a domestic relationship. Defendant had several previous convictions, including one for felony terrorist threats. Defendant had performed poorly on his parole from that offense by having his parole revoked. Defendant committed the instant offenses while he was still on probation from his most recent convictions.

Defendant failed to take responsibility or take seriously the offenses for which he was convicted in the instant case. Although defendant had a consistent work history, he had been fired for drug use. Defendant admitted he continued to use drugs, including the daily use of methamphetamine when he committed the instant offenses. Thus, defendant failed to demonstrate he was outside the scope of the spirit of the three strikes law, and the court acted within its discretion in denying defendant's *Romero* motion.

B.     *Section 1203.1c Costs*

Defendant contends the court erred in imposing $1,500 in costs for his presentence incarceration. The People concede the issue. We agree.

"In any case in which a defendant is convicted of an offense and is ordered to serve a period of confinement in a county jail, city jail, or other local detention facility as a term of probation or a conditional sentence, the court may, after a hearing, make a determination of the ability of the defendant to pay all or a portion of the reasonable costs of such incarceration, including incarceration pending disposition of the case." (§ 1203.1c, subdivision (a).)

8

Here, defendant was sentenced to prison, not a local detention facility as a term of probation. Thus, the court erred in imposing the costs of defendant's presentence incarceration. We shall order the judgment modified accordingly.

## III. DISPOSITION

The judgment is modified by striking the $1,500 costs imposed for defendant's presentence incarceration pursuant to section 1203.1c. The trial court is ordered to amend the abstract of judgment and sentencing minute order to reflect the striking of $1,500 costs and to forward a certified copy of the amended judgment to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:


CODRINGTON
J.


FIELDS
J.

9